# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3936 | **DATE** | 12/20/2002 |
| **CASE TITLE** | S.B. DESIGNS, ET AL vs. NIKE, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Defendant's motion for summary judgment and plaintiff's cross motion (17-1) for summary judgment is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | DEC 2 4 2002 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| DW | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 36

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
DEC 24 2002

S.B. DESIGNS, GARY SIDNEY AND
MAURICE SIDNEY,

    Plaintiffs,

v.

NIKE, INC.,

    Defendant.

No. 01 C 3936
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this action for violations of the Lanham Act and Illinois Unfair and Deceptive Trade Practices Act, alleging that NIKE, Inc. ("NIKE") has been and continues to infringe their "Crossover King" trademark. In 1992, plaintiffs created the "Crossover King" concept for which they received a copyright in September of 1994. The registered trademark brand Crossover King® describes a basketball player that plaintiffs choose as a representative of the brand–plaintiffs liken their idea to NIKE's "Air Jordan" concept and approach. In a letter dated December 27, 1994, plaintiffs contacted Tim Hardaway, presenting a marketing pitch using plaintiffs' Crossover King® to position Hardaway as a potential representative of a proposed joint venture between plaintiffs and NIKE. In the summer of 1996, plaintiffs met with Hardaway and presented their Crossover King® portfolio to him. Hardaway expressed interest in plaintiffs' proposal to license their mark and officially become the Crossover King®. At this time, plaintiffs were also exploring a possible venture with Allen Iverson and Reebok but ultimately held off until they heard from Hardaway or NIKE about their interest. In February of 1997, plaintiffs again sent a letter to Hardaway presenting the same marketing pitch that was contained

in the December 27, 1994, letter. In April of 1997, plaintiffs sent NIKE three promotional letters, to which NIKE responded via letter declining interest. From June 1997 to March 1998, plaintiffs resumed pursuing a venture with Iverson and Reebok. In 1998, NIKE created a poster featuring Hardaway, which contained the phrase "Crossover King." In July of 2000, plaintiffs discovered the poster's existence and requested that NIKE cease and desist their allegedly infringing activity. Just prior to discovering the poster's existence, plaintiffs were attending an apparel trade show in Las Vegas, during which they were asked numerous times whether plaintiffs' company, S.B. Designs, was associated with Hardaway or NIKE, and one individual asked if S.B. Designs was financially backed by NIKE.

Now, NIKE has moved for summary judgment of fair use, and in opposition to the motion, plaintiffs have moved for summary judgment on its infringement claim. At this point, discovery has not been completed. I allowed NIKE to file this motion early due to NIKE's representation to me that it can present incontrovertible evidence that it is entitled to summary judgment on its affirmative defense of fair use. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of this motion, I must construe the complaint in the light most favorable to plaintiffs and accept all facts alleged by them as true. After reviewing the record carefully, I find that there exist material issues of fact that prevent granting summary judgment for NIKE at this stage in the case.

NIKE's argument can be summarized as follows: Hardaway was commonly known as the "Crossover King" and therefore, NIKE's use of that phrase to describe Hardaway in a tribute poster constitutes fair use. NIKE makes four points in support of this argument: (1) Hardaway

2

was commonly known as the "Crossover King" for over six years; (2) plaintiffs themselves described Hardaway as "The One and Only Crossover King"; (3) plaintiffs' Crossover King® concept and logo were designed exclusively for Hardaway; and (4) the poster in question describes Hardaway as he was commonly known and the phrase "Crossover King" does not identify NIKE as the source or origin of the poster. Plaintiffs dispute all four of these contentions.

With respect to the first argument, plaintiffs contend that Hardaway was not commonly known as the "Crossover King" and that many of the articles NIKE attaches to its motion do not describe Hardaway as the "Crossover King." For example, one of NIKE's exhibits includes a reference by Magic Johnson as "the king of the crossover." Plaintiffs assert that if Hardaway ever possessed the specific title "Crossover King," it was due to Hardaway's own self-representation to the media as such. For instance, between 1996 and 2002, Hardaway, under NIKE's sponsorship, promoted his charity basketball tournament as the "Crossover King Pro Am Tournament."

Although it is an undisputable fact that during the six years in question, Hardaway's crossover was one of the best in the NBA, it is not undisputable that his crossover was so superior to the crossovers of all other NBA players such that only he could be known as the "Crossover King." In one of NIKE's exhibits, an article from the March 16, 1998, Sports Illustrated issue, "The 5 Best Moves in the NBA," it was Iverson's crossover that was listed as one of those five best moves. The article describes the deliberation between Iverson and Hardaway for this title, naming these players "the crossover kings," and the nod was given to Iverson. It appears that Iverson and Hardaway were the top contenders for being known as

3

having the best crossover in the NBA at that time and that Hardaway did not always come out on top. Thus, I find that it is not an undisputable fact that Hardaway was commonly known as the "Crossover King."

With respect to NIKE's second and third arguments, NIKE argues that plaintiffs themselves considered Hardaway the "Crossover King." The evidence that it presents in support of this assertion consists of the letters to Hardaway and presentation materials that refer to Hardaway as the "Crossover King." Plaintiffs' response is that all of the evidence cited by NIKE was prepared for the sole purpose of getting Hardaway on board–in other words, their reference to Hardaway as the "Crossover King" was, in a sense, flattery used to convince Hardaway and NIKE that the marriage of Hardaway to the Crossover King® trademark was a perfect fit. Plaintiffs assert that all references to Hardaway as the "Crossover King" were not meant as a statement of the truth, or their belief that Hardaway was the one and only "Crossover King." Rather, while Hardaway was their first choice of representative of their mark, he was not their only choice, as evidenced in their efforts to pursue a deal with Iverson. Although plaintiffs may have created the Crossover King® trademark with Hardaway in mind, plaintiffs' assertions suggest that their primary goal in creating the mark was to generate a product line featuring *a* prominent NBA player and that while Hardaway may have been their ideal, plaintiffs were prepared and willing to pursue other players.

With respect to NIKE's fourth argument, that NIKE used the phrase "Crossover King" in a purely descriptive sense, plaintiffs argue that their mark is registered and are thus entitled to a presumption that the mark is not merely descriptive, for "[r]egistration of the mark 'without proof of secondary meaning creates the presumption that the mark is more than merely

descriptive, and thus that the mark is inherently distinctive.'" *Chattanoga Mfg., Inc. v. NIKE, Inc.*, 140 F. Supp.2d 917, (N.D. Ill. 2001). At this point, I do not find that the record clearly establishes that NIKE has overcome this presumption, and I agree with plaintiffs' argument that if I were to find that NIKE had overcome the presumption, a factual issue would still exist as to whether the mark was descriptive or suggestive. Also, it does appear from NIKE's exhibits that NIKE is suggesting that media representations of Tim Hardaway as the "Crossover King" create a "dual use" of the mark. Whether this case falls closer to *Illinois High School Ass'n v. GTE Vantage*, 99 F.3d 244 (7th Cir. 1996), in which the court held that the term "March Madness" had attained "dual use" status due to the media's association of the term with the NCAA basketball tournament, or to *Dream Team Collectibles, Inc. v. NBA Properties, Inc.*, 958 F. Supp. 1401 (E.D. Mo. 1997), in which the court held that summary judgment was not appropriate because in contrast to *Illinois High School Ass'n*, a genuine issue of material fact existed as to whether it was the media or defendants themselves who were responsible for the public association of the "Dream Team" mark with the 1992 Olympic basketball team, is a factual question that cannot be resolved by the record before me. Plaintiffs have contended that Hardaway, under NIKE's sponsorship, promoted himself as the "Crossover King," and this is sufficient to raise a genuine issue of material fact with respect to the question of "dual use."

Finally, NIKE argues that its use of the phrase "Crossover King" on the Hardaway poster was not a trademark use because the poster contains a prominent display of NIKE's own swoosh symbol, and the words "Crossover King" are displayed in a non-prominent way. However, one of plaintiffs' factual assertions is that consumers at the Las Vegas trade show thought that S.B. Designs, Hardaway, and NIKE were somehow connected, and the trade show took place after the

5

Hardaway poster was released. Therefore, if I make all reasonable inferences in plaintiffs' favor, which I must for purposes of this motion, then it appears that the use of the words "Crossover King" on the Hardaway poster may have created confusion as to the poster's source, and this is also a factual question that cannot be resolved by the record.

To prevail on a fair use defense, NIKE must show that (1) it used the phrase "Crossover King" in a non-trademark sense; (2) the phrase is descriptive of its goods and services; and (3) it used the phrase "fairly and in good faith" only to describe their goods and services. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001). At present, summary judgment on fair use is inappropriate due to the existent factual disputes. Plaintiffs contend that not only does NIKE fail to meet its burden under this test, but that the evidence thus far is such that plaintiffs should be granted partial summary judgment on NIKE's fair use defense and the first two elements of plaintiffs' Lanham Act claim, thus leaving only issues of willfulness, extent of confusion, and damages. While I agree with plaintiffs that NIKE has failed to meet the elements of a fair use defense at this point in the case, I disagree that the evidence unequivocally swings the other way.

Therefore, both parties' motions for summary judgment are denied.

ENTER:

James B. Zagel
United States District Judge

DATE: 26 Dec 2002